## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

STEVE RISNER,
    Plaintiff,

Case No. 1:11-cv-00191
Litkovitz, M.J.

vs.

REGAL MARINE INDUSTRIES, INC.,
    Defendant.

**ORDER**

    This matter is before the Court upon defendant Regal Marine Industries, Inc.'s (Regal's)

motion for summary judgment (Doc. 57), plaintiff Steve Risner's opposing memorandum (Doc.

70), and defendant's reply memorandum in support of the motion for summary judgment (Doc.

74). Defendant Regal has submitted proposed undisputed facts in support of the motion for

summary judgment (Doc. 59) and plaintiff has filed a response to the proposed undisputed facts

(Doc. 71).

### I. Procedural history

    Plaintiff, a resident of Ohio, brings this diversity action against Regal, a corporation

organized and existing under the laws of the state of Florida with its principal place of business

in Florida, pursuant to 28 U.S.C. § 1332. (Doc. 1). The action arises out of the parties' dispute

over a boat manufactured by Regal and owned by plaintiff. Plaintiff asserts causes of action

under Ohio law for breach of express and implied warranties (Count 1), violation of the Ohio

Consumer Sales Practices Act (OCSPA), Ohio Rev. Code §§ 1345.01, *et seq.* (Count 2),

negligent misrepresentation (Count 3), intentional misrepresentation (Count 4), unjust

enrichment (Count 5), and promissory estoppel (Count 6). (Doc. 1).

## II. Undisputed facts

The undisputed facts giving rise to this lawsuit are as follows: Land N Sea was an authorized dealership that Mark Williams opened in Cincinnati, Ohio in 2005. (Doc. 59, FOF 1; Williams Depo., p. 19). Land N Sea had an Inventory Financing Agreement with GE Commercial Distribution Finance Corporation ("GE Capital"). (Doc. 59, FOF 3, Exh. B).

In August 2009, plaintiff purchased a model year 2008 Regal 3760 38-foot boat, hull number RGMTA355H708, short hull number TA 355 (the "2008 boat") from Land N Sea. (Doc. 59, FOFs 2, 4, Exhs. A, C). Plaintiff was dissatisfied with his purchase of the 2008 boat because he believed Williams of Land N Sea had quoted an inflated Manufacturers Suggested Retail Price (MSRP) for the boat, and he received a smaller discount on the purchase price of the boat than he believed he would get ($80,000 versus $120,000). (Doc. 59, FOFs 14, 16; Doc. 71, Response to FOF 16). Other than the issue with the inflated MSRP quote, there was no issue of which plaintiff was aware with the 2008 boat. (Doc. 59, FOF 21).

Plaintiff did not want to keep the 2008 boat because he had been quoted an inflated MSRP price for the boat. Land N Sea entered into settlement negotiations with plaintiff to reach a resolution regarding the 2008 boat. The parties were negotiating as of September 2009. (Doc. 59, FOF 25; Doc. 60, Exh. E). Sig Rudholm, Regal's Regional Sales Manager, intervened to help the parties reach a compromise agreement, and his involvement was essential to plaintiff entering into a deal with Land N Sea. (Doc. 59, FOFs 29, 30, 31, 32).

On November 18, 2009, plaintiff and Land N Sea executed a Settlement Agreement whereby Land N Sea placed an order on behalf of plaintiff with Regal for a model year 2010 Regal 3760 boat (Hull Identification Number RGMTA426B010, short hull number TA 426) (the

2

"2010 boat") (Doc. 59, FOF 34; Doc. 60, Exh. J). Plaintiff signed the Settlement Agreement

after reading it and reviewing it with his attorney. (Doc. 59, FOF 35). Pertinent provisions of

the Settlement Agreement provide as follows:

> (13) [T]his Agreement shall be effective as a full and final accord and satisfaction
> and general release from any and all matters arising from, based upon or related to
> the Purchase of the 2008 Regal 3760, its sale by Land N Sea and the subsequent
> purchase by Risner of the 2010 Regal 3760.
>
> (14) The Parties hereby fully release and forever discharge one another and their
> respective insurers, predecessors, successors, heirs, assigns, associates, affiliates,
> parent and subsidiary corporations, owners, stockholders, partners, attorneys,
> representatives, agents, officers, directors and employees, past, present and future,
> from and on account of any and all claims, demands, actions, causes of action or
> charges in favor of either party which in any way relates to or arises from or in
> connection with the subject Purchase of the 2008 Regal 3760, its sale by Land N
> Sea and subsequent purchase by Risner from Land N Sea of the 2010 Regal 3760.

(Doc. 60, Exh. J). The Settlement Agreement also includes an integration clause at ¶ 18 stating

that it "contains the entire agreement and understanding between the Parties concerning the

subject 2008 Regal 3760, its sale by Land N Sea and the subsequent purchase by Risner from

Land N Sea of the 2010 Regal 3760." In signing the Settlement Agreement, Land N Sea

intended to resolve all issues involving the 2008 boat and the 2010 boat. (Doc. 59, FOF 37).

Pursuant to the Settlement Agreement, delivery of the 2010 boat was to be made on or

before April 1, 2010, with delivery dates subject to availability from the manufacturer and delays

beyond the control of Land N Sea. (Doc. 59, FOF 54).

From January 25-26, 2010, plaintiff and Williams exchanged emails regarding cockpit

colors and other features of the 2010 boat. (Doc. 59, FOF 51; Exh. M). Williams thereafter sent

correspondence to Regal's President, Duane Kuck, outlining its financial difficulties with GE

Capital and its projected earnings from Regal going forward, and requesting financial assistance

from Regal, including a loan/advance. (Doc. 59, FOF 53; Doc. 60, Exh. O); Doc. 71, Response

3

to FOF 53).

The 2010 boat was covered by Regal's "Limited Warranty," which includes a "Limited General Warranty" that applies to the boat performance and repair issues complained of by plaintiff, and also includes several other types of limited warranties. (Doc. 59, FOFs 56, 57; Doc. 61, Exh. P). The Limited General Warranty states:

> Regal warrants to the original purchaser of this boat if purchased from an authorized Regal dealer, that the dealer or Regal will repair or replace any parts found to be defective in materials or workmanship for a period of one (1) year from the date of delivery, subject to all exceptions, limitations and conditions contained herein.

(Doc. 61, Exh. P). The Limited Warranty includes a number of exceptions. (Doc. 59, FOF 59). The Limited Warranty also includes customer obligations that are conditions precedent to the availability of any benefits under thereunder. (Doc. 59, FOF 58).

Only the Customer Service Manager of Regal can waive the terms, conditions, limitations and disclaimers in the Limited Warranty, and any such waiver must be in writing. (Doc. 59, FOF 60; Doc. 61, Exh. P). The Limited Warranty states in all capital letters:

> General Provisions: All general, special, indirect, incidental and/or consequential damages are excluded from this warranty and are totally disclaimed by Regal. It is in the interest of the parties that the owner's sole and exclusive remedy is the repair or replacement of the vessel or its allegedly defective component parts and that no other legal or equitable remedies shall be available to said owner. Some states do not allow the exclusion of incidental or consequential damages so the exclusion of incidental or other consequential damages may not apply to you. This is a limited warranty: Regal makes no warranty, other than contained herein; to the extent allowed by law any warranties of merchantability or fitness for a particular purpose arising in state law are expressly excluded to the extent allowed by law, any implied warranty of merchantability is limited to the duration of the Limited Warranty. All obligations of Regal are specifically set forth herein. Regal does not authorize any person or dealer to assume any liability in connection with Regal boats. . . .

(Doc. 59, FOF 61; Doc. 61, Exh. P).

4

Between April and May 2010, plaintiff communicated only with Williams at Land N Sea regarding the status of the boat. (Doc. 59, FOF 66). On May 17, 2010, Regal transferred the 2010 boat to Land N Sea as indicated by the Manufacturer's Statement of Origin ("MSO"). (Doc. 59, FOF 67; Exh. Q). Plaintiff did not pay Regal any money directly. (Doc. 59, FOF 68). Thereafter, plaintiff had difficulty obtaining the MSO for the boat, which typically is sent by Regal to the floor plan lender, which in this case was GE Capital. (Doc. 59, FOF 72, 75). GE Capital, as Land N Sea's floor plan lender, would not release the MSO on the 2010 boat until Land N Sea paid the boat off, which was its typical practice. (Doc. 59, FOFs 73, 76).

Regal delivered the 2010 boat to Land N Sea in Cincinnati on May 20, 2010. (Doc. 59, FOF 82). Following delivery, plaintiff reported to Rudholm that Williams had told him that there was an issue with controls on the boat and "they" were trying to have a Volvo representative come to Land N Sea to make repairs. (Doc. 59, FOF 83). There was also an issue with the cockpit upholstery colors, which plaintiff contends were not the colors he ordered. As of May 2010, those were the only physical problems plaintiff was aware of, although the boat had not yet been placed in the water at that point. It was still at Land N Sea, and the parties were "going back and forth" about repairs and who would assume responsibility. (Doc. 59, FOFs 85-92).

On June 22, 2010, GE Capital sent a letter to Williams notifying him that it would conduct a records review to determine Land N Sea's financial position. (Doc. 59, FOF 93; Doc. 61, Exh. S). On June 24, 2010, Williams informed Kuck at Regal that Williams' credit line had been canceled and he intended to "sign a voluntary repossession document with them." (Doc. 59, FOF 94; Doc. 61, Exh. T). Land N Sea requested an additional 90 days to acquire funding. (Doc. 59, FOF 94; Doc. 61, Exh. T). Regal did not grant Land N Sea's request to hold the

Cincinnati market open for 90 days. (Doc. 59, FOF 94; Doc. 61, Exh. T).

In June 2010, Rudholm warned plaintiff that he should remove the 2010 boat from Land N Sea because Land N Sea was having financial issues with GE Capital. (Doc. 59, FOF 96; Doc. 71, Response to FOF 96; Rudholm Depo, pp. 37-40). On June 30, 2010, plaintiff sent an email to Rudholm and Kuck indicating he was "done" with Land N Sea and requested that Regal send an experienced boat representative to conduct an orientation with him. (Doc. 59, FOF 98). After the boat was delivered to Conley Bottom Marina at Lake Cumberland, Kentucky on July 7, 2010, Regal representative Dan Snyder was sent to perform an orientation with plaintiff. (Doc. 59, FOF 105; Risner Depo., p. 122). Plaintiff told Snyder the generator was not functioning and the air conditioning would not operate. (Doc. 59, FOF 107). Plaintiff completed and signed a "New Boat Delivery Checklist" which indicated only an air conditioning problem, although plaintiff contends that Snyder rushed through the review and did not test all of the items on the list. (Doc. 59, FOF 108; Exh. Y; Response to FOF 108). Plaintiff sent Regal an email stating that Snyder was "very helpful and patient" and they had accomplished everything except for getting the generator running. (Doc. 59, FOF 112; Exh. Z). Plaintiff states that he again asked Mark Williams for the MSO, but he was not responding. (*Id*.).

The parties disagree about a number of facts between the time of Snyder's orientation and an email plaintiff sent to Kuck, Regal's president, on July 20, 2010. The parties agree the email is the key email explaining plaintiff's motivation to sue Regal. (Doc. 59, FOF 116). Plaintiff believed Regal misrepresented the quality of the 2010 boat. (Doc. 59, FOF 121). Plaintiff also believed that Regal knew Williams and Land N Sea engaged in deceptive sales practices and did not inform plaintiff when Regal knew Land N Sea was about to go bankrupt. (Doc. 59, FOF 120). Plaintiff believed there were a number of items on the boat that needed to be fixed. In July

6

2010, when the boat was still covered by Regal's one-year warranty, plaintiff had reported problems with the fuel gauge, instrument lights, and trim tab indicators. (Doc. 59, FOF 123, 124; Doc. 71, Responses to FOF 123, 124). However, the parties dispute whether plaintiff requested repairs, with plaintiff asserting that he had been requesting repairs for months, none of which Regal has performed, and Regal denying that plaintiff requested repairs. (Doc. 71, FOFs 117, 124). Plaintiff considered the July 2010 email to be his final request for Regal to satisfy his demands, and he demanded that Regal refund the money he had paid to Land N Sea. (Doc. 59, FOF 118, 125).

On August 1, 2010, plaintiff received a copy of the MSO. (Doc. 59, FOF 127). Plaintiff has never filed for title to the boat because it is not his intention to ever accept the boat. (Doc. 59, FOF 128). According to plaintiff, he does not want to accept the boat because of "the myriad defects and delays, because he believed the taxes had not been paid on it, and because the MSO had arrived nearly four months after he was first supposed to receive the boat." (Doc. 71, Responses to FOFs 129-130).

After receiving the MSO, plaintiff communicated with Regal regarding issues with the boat. On August 1, 2010, plaintiff sent an email to Regal employee Tony Mayo to inform him that the generator appeared to be working but now the fuel gauge was not working. (Doc. 59, FOFs 132, 133; Exh. BB; Doc. 71, Responses to FOFs 132, 133). The parties were unable to resolve their dispute over the upholstery. (Doc. 59, FOFs 135, 136; Doc. 71, Responses to FOFs 135, 136). On August 30, 2010, plaintiff sent an email to Regal complaining that he did not have title or documentation, the interior had not been changed out, and the air conditioning did not work. (Doc. 59, FOF 139; Exh. DD). Plaintiff sent a follow-up email the next day to Mayo at Regal clarifying his email of the prior day to explain that he wanted confirmation that the taxes

7

were paid on the boat and that he wanted the boat "documented" rather than titled. (Doc. 59, FOF 140; Exh. DD).

On September 7, 2010, plaintiff sent an email to Mayo at Regal asking him to have an entity called "Hilltop Marine" contact plaintiff to schedule service work on his boat and listing as issues the air conditioning, instrument panel lights, aftermarket trim tab indicator lights that had been installed by Land N Sea, and the fresh water pump. (Doc. 59, FOF 143; Exh. EE). The following day, counsel for GE Capital sent a demand letter to counsel for Land N Sea regarding payment of a remaining deficiency on Land N Sea's GE Capital account. (Doc. 59, FOF 144; Exh. FF).

In September 2010, Hilltop Marine, at Regal's expense, made repairs to the 2010 boat, including re-priming the air conditioning unit. (Doc. 59, FOF 145). Hilltop had previously made repairs to the generator in July 2010. (*Id.*).

At some point, Regal terminated its dealer agreement with Land N Sea. (Doc. 59, FOF 146, Exh. HH; Doc. 71, Responses to FOF 46, Exhs. 10, 14). Regal terminated the dealer agreement with Land N Sea because the dealer "sold out of trust," meaning Land N Sea sold boats that were encumbered and delivered to the customer without full payment being made to the floor plan lender. (Doc. 59, FOF 147). On November 3, 2010, counsel for GE Capital submitted a letter to the American Arbitration Association requesting entry of a stipulated Consent Arbitration Award against Land N Sea. (Doc. 59, FOF 148). In December 2010, Land N Sea went out of business. (Doc. 59, FOF 149).

On April 8, 2012, 35-year professional marine surveyor Peter Droppelman inspected plaintiff's boat and determined it had an appraised value of $225,000.00. He based the appraised value on the value of other 2010 Regal boats of the same model and like condition.

8

(Doc. 59, FOF 152; Exh. KK). The appraised value is based on book values, dealer and factory opinions, broker lists, past surveys, present condition with all systems operation, and his knowledge of the industry and particular markets. (Doc. 59, FOF 152; Exh. KK).

## III. Disputed facts

In addition to the disputed facts noted above, the parties dispute a number of facts, including:

1. The initial purchase price of the 2008 boat, which plaintiff alleges was $220,345 and Regal alleges was $230,000. (Doc. 59, FOF 12; Doc. 71, Response to FOF 12).

2. What information and representations plaintiff relied on in deciding to purchase the 2008 boat from Land N Sea, including whether plaintiff relied on Rudholm's representations about Regal's dedication to customer satisfaction and his representations about Land N Sea in addition to Regal's mission statement and brochures. (Doc. 59, FOFs 10, 11; Doc. 71, Responses to FOFs 10, 11, Risner Depo, p. 37).

3. Whether in August 2009, when plaintiff purchased the 2008 boat, Regal was aware that Land N Sea was experiencing financial issues beyond the general financial issues the entire boating industry was experiencing at the time as a result of the recession. (Doc. 59, FOF 6; Doc. 71, Response to FOF 6).

4. Whether Rudholm, Regal's Regional Sales Manager, believed Land N Sea to be a reputable dealership and whether Rudholm had reason to believe Land N Sea would not enter into a fair deal with Risner for the purchase of the 2008 boat. (Doc. 59, FOF 9).

5. Whether at any time Regal was in a position to know about the financial health of Land N Sea. (Doc. 59, FOFs 45, 49; Doc. 71, Responses to FOFs 45, 49).

6. Land N Sea's financial condition at the time plaintiff and Land N Sea entered into the

9

Settlement Agreement. (Doc. 59, FOFs 47, 48).

7. The purpose of the Settlement Agreement and what the parties to the Agreement hoped to accomplish. (Doc. 59, FOFs 17, 19, 20, 26; Doc. 71, Responses to FOFs 17, 19, 20, 26).

8. Whether Rudholm was involved in communications between Williams and plaintiff that occurred the week prior to execution of the agreement. (Doc. 59, FOF 33; Doc. 71, Response to FOF 33).

9. Whether Regal employees would assist dealers in making sales to prospective owners, including talking to prospective owners about Regal's products. (Doc. 59, FOF 42; Doc. 71, Response to FOF 42).

10. Whether plaintiff paid cash for the 2010 boat or whether the boat was 100% financed by GE Capital. (Doc. 59, FOF 55; Doc. 71, Response to FOF 55).

11. Whether plaintiff "purchased" the 2010 boat or whether he exchanged the 2008 boat and additional cash for the 2010 boat.

12. The role Regal played in trying to determine why the MSO had not been delivered. (Doc. 59, FOFs 80, 81; Doc. 71, Responses to FOFs 80, 81).

13. The results of the review and orientation on the 2010 boat conducted by Snyder of Regal and whether the boat was functioning properly with the exception of the air conditioning and generator thereafter. Plaintiff contends that, in addition, the fuel gauge did not work, the trim tab indicators were wrong, the instrument lights did not work, and the fresh water pump did not work. (Doc. 59, FOF 110; Doc. 71, Response to FOF 110; Risner Depo., 151, 170, 173).

14. Whether Regal made an acceptable offer to replace the upholstery in the cockpit. (Doc. 59, FOFs 135, 136; Doc. 71, Responses to FOFs 135, 136).

15. Whether Regal ever refused to make repairs under the warranty, including as to the fuel gauge, the trim tab indicators, the instrument lights, the fresh water pump, and the air conditioner. (Doc. 59, FOF 142; Doc. 71, Response to FOF 142).

## III. Motion for summary judgment

Defendant Regal moves the Court for summary judgment on all claims against it. Regal argues: (1) there is no record evidence to support plaintiff's claims for breach of express warranty or implied warranty; (2) plaintiff's claim under the Ohio Consumer Sales Practices Act ("OCSPA") is not actionable on a number of grounds; (3) plaintiff cannot establish the elements of a negligent or intentional misrepresentation claim as a matter of law; (4) there is no evidence to support plaintiff's claim of unjust enrichment; (5) plaintiff cannot bring a promissory estoppel claim because the Regal Limited Warranty covers the contractual relationship between Regal and plaintiff; and (6) plaintiff has not proved damages because he cannot revoke acceptance of the Settlement Agreement with Land N Sea against Regal, he has not provided a credible measure of actual damages under Ohio Rev. Code § 1302.88, and he cannot recover incidental or consequential damages under the facts of this case.

In response, plaintiff states that he is dismissing his claims for unjust enrichment and promissory estoppel. (Doc. 70 at 25). Plaintiff alleges that there are numerous genuine issues of material fact which preclude a grant of summary judgment in Regal's favor on his remaining claims seeking damages and rescission of Regal's sale of the 2010 boat to him. (Doc. 70 at 18). Plaintiff alleges that the evidence produced during discovery has shown that Regal knew Land N Sea was in desperate financial condition and that the principal of Land N Sea, Mark Williams, had a history of misleading and deceiving his customers. Plaintiff alleges that Regal personally persuaded plaintiff to continue doing business with Land N Sea by touting the quality of Regal's

11

boats and its commitment to customer satisfaction and by assuring him that Land N Sea was a

reputable dealer. Plaintiff contends that on the strength of Regal's involvement in his dealings

with Land N Sea, he purchased the 2010 boat and that the transaction was plagued with

difficulties from the outset. Plaintiff alleges that the boat was delivered months behind schedule,

he could not obtain the necessary documents to title the boat, the boat did not conform to his

order, and the boat was "beset with repeated mechanical problems from the moment it arrived."

(Doc. 70 at 2). Plaintiff states Regal made assurances to fix all of the problems and to make him

whole but failed to follow through on it promises and representations. Plaintiff alleges that the

claims he brings depend on disputed factual matters such as the parties' statements, negotiations,

promises, actions, and underlying intent and motivation.

### IV. Summary Judgment Standard

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination

of an action. This Court may only grant summary judgment as a matter of law when the moving

party has identified, as its basis for the motion, an absence of any genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper where no

genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of

law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court must draw

all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.,* 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a

sufficient disagreement to require submission to a [fact-finder] or whether it is so one-sided that

one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-

52 (1986).

The Court is not to weigh the evidence and determine the truth of the matter but is to

12

decide whether there is a genuine issue for trial. *Id.* at 249. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a fact-finder to return a verdict for that party. *Id.* at 249 (citing *Cities Serv.*, 391 U.S. at 288-289). If the evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82, 84 (1967), or is not significantly probative, *Cities Serv.*, 391 U.S. at 290, judgment may be granted. *Anderson*, 477 U.S. at 249.

## V. Request for oral argument

Defendant Regal has requested oral argument in the caption of its motion. The Local Rules provide that "if oral argument is deemed to be essential to the fair resolution of the case because of its public importance or the complexity of the factual or legal issues presented, counsel may apply to the Court for argument." S. D. Ohio Civ. R. 7.1(b)(2). Counsel may request oral argument "by including the phrase 'ORAL ARGUMENT REQUESTED' (or its equivalent) on the caption of the motion or on a memorandum. The ground(s) for any such request shall be succinctly explained." (*Id.*).

Counsel for Regal has not explained the grounds for its request for oral argument as required under the Local Rules of this Court. Furthermore, the Court finds that the legal and factual issues involved in the motion for summary judgment are not complex. Pursuant to S. D. Ohio Civ. R. 7.1(b)(2), plaintiff's request for oral argument is therefore DENIED.

## VI. Choice of law

Neither plaintiff nor Regal has explicitly specified which state's law applies to this dispute, but both parties rely on Ohio law. Courts have interpreted the parties' reliance on a state's law to indicate consent to the forum state's law. *See Kuns v. Ford Motor Co.*, 3:11 CV 1540, 2013 WL 645621, at *4 (N.D. Ohio Feb. 21, 2013) (citing *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.,* 611 F.3d 339, 345 (7th Cir. 2010); *Leininger v. Reliastar Life Ins.*

*Co.,* No. 2:06-cv-12249, 2007 WL 2875283, at *7 (E.D. Mich. Sept. 28, 2007); *Carbonic*

*Products Co. v. Welding & Cutting Supply Co.,* 823 F.2d 553, at *2 (6th Cir. 1987) (table)).

Furthermore, because the transaction in issue occurred in Ohio, the warranty was entered into in

Ohio, and the dealer was located in Ohio, the dispute meets the requirements of Restatement

(Second) of Conflict of Laws § 188 (1971). *Id.* (citing *Gries Sports Enters., Inc. v. Modell,* 473

N.E.2d 807, 810 (Ohio 1984); *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941)).

The Court will therefore apply Ohio law.

## VII. Plaintiff's claims

### A. Breach of express warranty

#### 1. The parties' arguments

Plaintiff brings claims for breach of express and implied warranties, alleging that

defendant expressly and impliedly warranted that the 2010 boat would be merchantable and

would resemble the representations of quality Regal provided to him, and Regal breached those

warranties by providing plaintiff a boat that was not mechanically operational, was not of

acceptable quality in the industry, and did not conform to the representations of quality Regal

made.[1] Plaintiff claims he has been damaged in the approximate amount of $300,000.00, plus

interest. (Doc. 1, ¶¶ 33-37).

Regal argues it is entitled to summary judgment on plaintiff's claim for breach of express

warranty. (Doc. 57 at 6). Regal contends that the 2010 boat was covered by the Limited

Warranty (Doc. 61, Exh. P), that its liability to plaintiff is defined by and limited to the terms of

the Limited Warranty, and that there is no evidence that Regal failed to comply with the Limited

14

Warranty. (Doc. 57 at 5). Regal contends that even though plaintiff requested repairs be made to the boat, there is no evidence that repairs covered by Regal's Limited Warranty were not made or were not made in accordance with the Limited Warranty, that Regal refused to make any repairs in a timely fashion or failed to make an offer to replace parts, or that any repairs failed. Regal alleges that it performed the requested repairs covered by the Limited Warranty in accordance with the terms of that warranty. Regal also alleges that none of the alleged defects was severe or repetitive in nature. In addition, Regal asserts that plaintiff complained of problems that are not covered by the Limited Warranty, specifically "a Volvo-covered engine issue, aftermarket parts problems and improperly ordered items." (*Id.* at 6).

Plaintiff clarifies in his opposing memorandum that he is asserting two types of breach of express warranty claims against Regal: (1) a statutory breach of express warranty claim against Regal under Ohio Rev. Code § 1302.26 which codifies the Uniform Commercial Code (UCC) and (2) a breach of express warranty claim under tort common law. Plaintiff in turn premises his statutory claim on Regal's failure to comply with two categories of representations. The first category of representations consists of representations contained with the Regal Limited Warranty. Plaintiff claims Regal breached the Limited Warranty by failing to make repairs, or by failing to make repairs in a timely manner, on parts of the 2010 boat that were expressly covered by the terms of Limited Warranty. (Doc. 70 at 5). Specifically, plaintiff alleges that Regal failed to repair the fuel gage, the instrument panel lights, and the fresh water pump, and

---

[1] Plaintiff also claimed in the complaint that Regal breached express and implied warranties that the boat was fit for his particular purpose. (Doc. 1, ¶ 36). Plaintiff states in his opposing memorandum that he is not pursuing any claims for breach of implied warranty of fitness for a particular purpose. (Doc. 70 at 50, n. 1).

Regal failed to repair in a timely or reasonable fashion the generator, the "EVC" controls, and the air conditioner. The second category of representations consists of statements, advertisements and representations made by the company and its employees to plaintiff, and representations of quality Regal made to the public on its website, which plaintiff claims he was entitled to rely on and did rely on in purchasing the 2010 boat. These included statements that Rudholm, Regal's Regional Sales Manager, made to plaintiff on multiple occasions to the effect that Regal "built the highest quality boats, that [Regal] lived up to [its] mission statement, and that [Regal's] boats had won multiple J.D. Power awards for quality," and similar representations "touted on [Regal's] website to the public." (*Id.*, citing Risner Depo., pp. 16, 61-62; Doc. 71, Exh. 19).

Second, plaintiff brings a breach of express warranty claim under tort common law based on the same advertisements, website representations, and statements by Regal employees that he claims created express warranties under Ohio statutory law. (Doc. 70 at 3-5). Plaintiff contends that a tort claim for breach of express warranty may be based on an affirmation of fact made by a seller regarding a product so as to induce its purchase, or on representations made in a manufacturer's advertisements, and that no privity of contract is required in order to bring such a claim.

In reply, Regal contends that plaintiff's arguments in support of his breach of express warranty claims ignore the Limited Warranty, from which Regal's liability as the manufacturer of the 2010 boat is derived and by which its liability is measured. (Doc. 74 at 13). Regal asserts that it made no affirmation of fact or promise about the 2010 boat other than what is contained in the Limited Warranty. (*Id.*). Regal contends that even if plaintiff could bring a claim for breach of express or implied warranty, plaintiff has offered no expert testimony to show that the boat is

16

unmerchantable or that the issues he complains of are caused by a defect covered by the warranty. (*Id.* at 14, citing *Miller v. DaimlerChrysler Motors Corp.*, 2001 WL 587496, at *5 (Ohio App. 8 Dist. 2001).

### 2. The applicable law

Plaintiff's statutory claims for breach of express warranty are governed by the UCC as adopted by Ohio, Ohio Rev. Code § 1302.01, *et seq.* To establish a claim for breach of express warranty under Ohio law, plaintiff must prove: "(1) the existence of a warranty; (2) the product failed to perform as warranted; (3) the plaintiff provided the defendant with reasonable notice of the defect; and (4) the plaintiff suffered an injury as a result of the defect." *McKinney v. Bayer Corp.*, 744 F. Supp.2d 733, 753 (N.D. Ohio 2010) (citing *St. Clair v. Kroger Co.*, 581 F. Supp.2d 896, 902 (N.D. Ohio 2008) (citation omitted)). Ohio law provides that express warranties by sellers of goods are created in one of three ways:

> (1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>
> (3) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

Ohio Rev. Code § 1302.26(A).

Ohio courts have held that an advertisement may be the basis of an express warranty. A seller's advertisement of its product may constitute an express warranty so long as the statement in the advertisement fulfills the requirements of § 1302.26(A). *Nat'l Mulch & Seed, Inc. v.*

17

*Rexius Forest By-Products Inc.*, No. 2:02-CV-1288, 2007 WL 894833, at *15 (S.D. Ohio Mar. 22, 2007) (citing *Jones v. Kellner,* 5 Ohio App.3d 242, 242-43 (Ohio App 8 Dist. 1982)). *See also Schwartz v. Gross*, 114 N.E.2d 103, syll. ¶ 1 (Ohio App. 9 Dist. 1952) ("A positive statement of the quality of goods is an express warranty if the natural tendency of the statement is to induce a buyer to purchase the goods, and if the buyer purchases the goods in reliance thereon."). However, "an affirmation of the value of the goods" or a statement that purports to be "merely the seller's opinion or commendation of the goods" cannot create an express warranty. *Nat'l Mulch & Seed, Inc.*, 2007 WL 894833, at *15 (citing Ohio Rev. Code § 1302.26(B)).

A number of Ohio courts have recognized that privity is not required to impose liability for breach of an express warranty. *Johnson v. Monsanto Co.*, No. 11-02-02, 2002 WL 2030889, at *3 (Ohio App. 3 Dist. Sept. 6, 2002). *See also Hahn v. Jennings*, No. 04AP-24, 2004 WL 2008474, at *6 (Ohio App. 10 Dist. Sept. 9, 2004) ("There are cases indicating an absence of privity does not defeat a UCC action in contract to enforce an express warranty.") (citing *C.W. Zumbiel Co. v. Reinchhold Chemicals, Inc.*, No. C-950644, 1996 WL 400501 (Ohio App. 1 Dist. June 5, 1996); *Lawyers Cooperative Publishing Co. v. Muething*, 603 N.E.2d 969 (Ohio 1992)). Thus, it has been held that a manufacturer can be held liable by a purchaser for breach of an express warranty even though there is no privity between the two parties. *Johnson*, 2002 WL 20308889, at *3; *Voytovich v. Bangor Punta Operations, Inc.*, 494 F.2d 1208, 1211 (6th Cir. 1974) ("Under Ohio law it is clear that a purchaser who relies on the express warranty of a manufacturer in purchasing goods, and suffers injury or loss of bargain, may directly sue the manufacturer.") (citing *Rogers v. Toni Home Permanent Co.*, 147 N.E.2d 612 (Ohio 1958) and *Inglis v. American Motors Corp.*, 209 N.E.2d 583 (Ohio 1965)). The Court in *Johnson* asserted

18

that "to preclude [an action for breach of express warranty under the UCC for a lack of privity] when a manufacturer has induced a party, by way of express warranty, to purchase one of its products from an intermediary would be unconscionable" because the party making the express warranty about its product would be able to shield itself from liability by selling to a middleman. *Johnson*, 2002 WL 2030889, at \*3 (citations omitted).

### 3. Resolution

Defendant Regal's motion for summary judgment is denied with respect to plaintiff's claim for breach of express warranty brought under Ohio Rev. Code § 1302.26(A). Regal does not deny that it was bound by the terms of the Limited Warranty, and there are genuine issues of material fact as to whether Regal breached the Limited Warranty. The parties dispute whether Regal refused or failed to repair items that were covered by the express terms of the Limited Warranty, including the fuel gauge, the trim tab indicators, the instrument lights, the fresh water pump, and the air conditioner. (Doc. 59, FOF 110, 142; Doc. 71, Responses to FOFs 110, 142, Risner Depo., pp. 151, 170, 173).

In addition, there are unresolved issues as to whether plaintiff may pursue a breach of express warranty claim under Ohio Rev. Code § 1302.26 based on representations Regal made about the 2010 boat that were not included in the Limited Warranty. Regal argues plaintiff cannot pursue a claim based on representations not covered by the terms of the Limited Warranty because Regal made no affirmation of fact or promise about the 2010 boat other than what is contained in the Limited Warranty, and Regal and plaintiff did not engage in any bargaining so as to create an express warranty under the statute. (Doc. 74 at 13, citing *McKinney v. Bayer Corp.*, 744 F. Supp.2d 733, 753 (N.D. Ohio 2010) (quoting Ohio Rev. Code § 1302.26(A)(1)-(3)). However, plaintiff alleges that Regal did make affirmations of fact or promise beyond

19

those in the Limited Warranty that constitute an express warranty. (Doc. 70 at 4, citing Risner Depo., pp. 16, 61-62; Doc. 71, Exh. 19). Plaintiff testified at his deposition that Regal gave him the following assurances: "Rudholm . . . called me personally, and talked to me at length about the benefits of the Regal organization, the fact they won a J.D. Power award for five consecutive years; that they were the best boat on the market . . . and I would be well served to buy a Regal boat." (Risner Depo., p. 16). Plaintiff further testified: "[Rudholm] promised me that the Regal organization stands behind every boat they sell. They have a mission statement that has made them, has awarded them the J.D. Power award for . . . four or five years, because the customer is their first priority, and most important thing, satisfaction of the customer." (Risner Depo., pp. 61-62). In addition, plaintiff has submitted copies of pages from Regal's website, which he asserts contains representations similar to those Regal made to plaintiff "about quality." (Doc. 71, Exh. 19).

Regal has not adequately developed factual or legal arguments to show that the representations the company and its employees made in advertisements and statements to plaintiff were insufficient to create an express warranty under Ohio law. Regal has likewise failed to show that it cannot be held liable as the manufacturer of the boat for representations the company and its representatives made about the quality of the boat. In light of these unresolved matters and the factual issues underlying plaintiff's statutory claim for breach of the Limited Warranty, the Court will deny summary judgment on plaintiff's claim for breach of express warranty under Ohio Rev. Code § 1302.26(A).

Defendant Regal has not addressed plaintiff's claim for breach of express warranty premised on a tort theory of liability. (*See* Doc. 70 at 4, citing *Wagner v. Roche Laboratories*, 709 N.E.2d 162, 164 (Ohio 1999) (citing *Rogers v. Toni Home Permanent Co.*, 147 N.E.2d 612

20

(Ohio 1958)) ("Under modern merchandising practices, where the manufacturer of a product in his advertising makes representations as to the quality and merit of his product aimed directly at the ultimate consumer and urges the latter to purchase the product from a retailer, and such ultimate consumer does so in reliance on and pursuant to the inducements of the manufacturer and suffers harm in the use of such product by reason of deleterious ingredients therein, such ultimate consumer may maintain an action for damages immediately against the manufacturer on the basis of express warranty, notwithstanding that there is no direct contractual relationship between them). Accordingly, because the record is not adequately developed as to this issue, the Court will allow plaintiff to proceed to trial on his breach of express warranty claim under both statutory and common law tort theories of recovery and reserve ruling on the issue of whether liability can be premised on a tort theory of recovery under the facts of this case.

### B. Breach of implied warranty

Regal argues that it is entitled to summary judgment as a matter of law on plaintiff's claim for breach of implied warranty. (Doc. 57 at 6-9). Regal contends that privity is required to maintain a breach of implied warranty claim under Ohio law, and privity between Regal and plaintiff is lacking. In addition, Regal asserts that even if it were the seller of the 2010 boat under Ohio Rev. Code § 1302.01, *et seq.*, Regal's express warranty disclaims any implied warranties as is permitted under Ohio Rev. Code § 1302.29(B). Regal further asserts that plaintiff has not provided any record evidence that it breached an implied warranty.

In response, plaintiff indicates that he is bringing a claim for breach of the implied warranty of merchantability under both contract and tort law. In support of the contract claim, plaintiff alleges there was privity of contract with Regal, Regal did not effectively disclaim implied warranties of merchantability under Ohio Rev. Code § 1302.29, and there is ample

21

evidence that Regal breached the implied warranty of merchantability. Plaintiff alleges that the mechanical problems with the 2010 boat, which include a broken generator and air conditioner, inoperable instrument panel lights, and a broken fresh-water pump that prevents water from being pumped to the kitchen or bathroom facilities, make the boat unmerchantable pursuant to Ohio Rev. Code § 1302.27(B). Plaintiff alleges that privity of contract is not necessary to bring a claim for breach of implied warranty sounding in tort, and the warranty disclaimers do not apply to the tort claim.

In reply, Regal argues privity is required for both types of implied warranty claims. Regal further argues if there is any privity between the company and plaintiff, it exists by virtue of the Settlement Agreement, and plaintiff has waived any claims he might have as to the 2010 boat under the Agreement. Finally, Regal argues even assuming plaintiff could bring a claim for breach of implied warranty, his claim must fail because he offers no expert testimony that the boat is unmerchantable.

Ohio law recognizes implied warranty claims under both contract law and tort law. *In re Porsche Cars North America, Inc.*, 880 F. Supp.2d 801, 819 (S.D. Ohio 2012). A contract claim for breach of implied warranty is governed by Ohio Rev. Code § 1302.27, which provides that "[u]nless excluded or modified as provided in section 1302.29 of the Revised Code, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Ohio Revised Code § 1302.27(A). The statute provides that in order to be merchantable, goods must:

> (1) pass without objection in the trade under the contract description; and
> (2) in the case of fungible goods are of fair average quality within the description; and
> (3) are fit for the ordinary purposes for which such goods are used; and
> (4) run, within the variations permitted by the agreement, of even kind, quality and quantity, within each unit and among all units involved; and

22

(5) are adequately contained, packaged, and labeled as the agreement may require; and

(6) conform to the promises or affirmations of fact made on the container or label if any.

Ohio Rev. Code § 1302.27(B).

Ohio Rev. Code § 1302.29(B) governs disclaimers of warranty. It provides:

(B) Subject to division (C) of this section, to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. . . .

Ohio law requires privity in order to sustain a contract-based breach of implied warranty claim. "[L]ongstanding Ohio jurisprudence provides that purchasers . . . may assert a contract claim for breach of implied warranty only against parties with whom they are in privity." *Curl v. Volkswagen of Am., Inc.,* 871 N.E.2d 1141, 1147 (Ohio 2007). *See Savett v. Whirlpool Corp.,* No. 12-cv-310, 2012 WL 3780451, at *10 (N.D. Ohio Aug 31, 2012). *See also Kuns v. Ford Motor Co.,* 3:11 CV 1540, 2013 WL 645621, at *8 (N.D. Ohio Feb. 21, 2013) (in Ohio, the UCC's implied warranty of merchantability is not enforceable against manufacturers who are not in privity with the purchaser). However, "when the manufacturer is so involved in the sales transaction that the distributor merely becomes the agent of the manufacturer, then the manufacturer and the ultimate consumer are in privity of contract." *Bobb Forest Prods., Inc. v. Morbark Indus. Inc.,* 783 N.E.2d 560, 576 (Ohio App. 7 Dist. 2002) (citing *Mettler–Toledo, Inc. v. Wysong & Miles Co.,* No. 98AP–1462, 1999 WL 1009721, at *3 (Ohio App. 10 Dist. Nov. 9, 1999); *Myers v. Moore Distrib., Inc.,* No. CA92–07–125, 1993 WL 19093, at *2 (Ohio App. 12 Dist. Feb. 1, 1993)). In addition, "[a] consumer may also have privity of contract with the manufacturer if that consumer is an intended third-party beneficiary to a contract." *Bobb Forest Prods.,* 783 N.E.2d at 576 (citing *Am. Rock Mechanics, Inc. v. Thermex Energy Corp.,* 608

23

N.E.2d 830 (Ohio App. 8 Dist.1992)). *But see McKinney,* 744 F. Supp.2d at 756 (declining to create an exception to *Curl* where it was alleged the consumer was the intended beneficiary of the manufacturer's agreement with its dealer).

There are unresolved issues evident from the record which preclude a grant of summary judgment in favor of Regal on plaintiff's contract-based claim for breach of implied warranty. First, there are questions concerning the nature of the parties' relationship as it pertains to plaintiff's acquisition of the 2010 boat which raise an issue as to whether plaintiff and Regal were in privity. *See Bobb Forest Prods.,* 783 N.E.2d at 576.

Assuming plaintiff and Regal were in privity, the record does not clearly show that Regal clearly disclaimed any implied warranty of merchantability. Rather, the language in the Limited Warranty is ambiguous in this regard. The Limited Warranty states, in pertinent part:

> THIS IS A LIMITED WARRANTY; REGAL MAKES NO WARRANTY, OTHER THAN CONTAINED HEREIN; TO THE EXTENT ALLOWED BY LAW ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE ARISING IN STATE LAW ARE EXPRESSLY EXCLUDED TO THE EXTENT ALLOWED BY LAW, ANY IMPLIED WARRANTY OF MERCHANTABILITY IS LIMITED TO THE DURATION OF THIS LIMITED WARRANTY. ALL OBLIGATIONS OF REGAL ARE SPECIFICALLY SET FORTH HEREIN. REGAL DOES NOT AUTHORIZE ANY PERSON OR DEALER TO ASSUME ANY LIABILITY IN CONNECTION WITH REGAL BOATS.

(Doc. 61, Exh. P). The language of the Limited Warranty, which states both that warranties of merchantability are expressly excluded to the extent allowed by law, and that any implied warranty of merchantability is limited to the duration of the Limited Warranty, does not clearly exclude all warranties of merchantability. In addition, Regal has not established that the Settlement Agreement between plaintiff and Land N Sea released any breach of warranty claims plaintiff may have against Regal. Finally, there are factual disputes that preclude a determination

24

on summary judgment as to whether the 2010 boat satisfies the definition of "merchantable" under § 1302.27. For these reasons, Regal is not entitled to summary judgment on plaintiff's contract-based breach of implied warranty claim.

"'Implied warranty in tort' is a common law cause of action that imposes liability upon a manufacturer or a seller for breach of an implied representation that a product is 'of good and merchantable quality, fit and safe for its ordinary intended use.'" *Sirlouis v. Four Winds Intern. Corp.*, No. 1:10cv00469, 2012 WL 1068709, at *15 (N.D. Ohio March 29, 2012) (citing *White v. DePuy, Inc.,* 718 N.E.2d 450 (Ohio App. 12 Dist. 1998) (citing Ohio Jurisprudence (1987) 470, Products Liability, § 39)). To prevail on an implied warranty in tort claim under Ohio law, a plaintiff must prove: (1) a defect existed in a defendant's product that made it unfit for its ordinary, intended use; (2) the defect existed at the time the product left the defendant's possession; and (3) the defect was the proximate cause of the plaintiff's injuries. *In re Porsche Cars North America, Inc.*, 880 F. Supp.2d at 867. As is true of a contract-based breach of warranty claim, privity is required for a breach of implied warranty claim brought under Ohio tort law. *Id.* at 820 (finding *Curl* court implicitly reached the conclusion that "where a State permits warranty claims that are based on either tort or contract law, the Court must look exclusively to contract law to determine whether privity is required") (citing *Walsh v. Ford Motor Co.*, 588 F. Supp. 1513, 1527 (D.D.C. 1984)). *See Kuns*, 2013 WL 645621, at *8 (implied warranty of merchantability and implied warranty of fitness for a particular purpose are not enforceable against manufacturers who are not in privity with the purchaser). *See also Sirlouis*, 2012 WL 1068709, at *15 (citing *Curl*, 871 N.E.2d 1141; *Flex Homes, Inc.*, 721 F.Supp.2d at 673 (N.D. Ohio 2010) ("under Ohio law, privity of contract is generally a prerequisite to a breach of the implied warranties of merchantability and fitness for a particular purpose.")).

As noted above, there are disputed questions of fact concerning whether plaintiff was in privity of contract with Regal. In addition, a review of the case law cited by the parties demonstrates that Ohio law is not clearly established on the issue of whether a tort claim for breach of implied warranty is properly brought where there is a valid, enforceable written warranty. *See Hartman v. Mercedes-Benz, U.S.A., L.L.C.*, 1:08-CV-03034, 2010 WL 907969, at *7 (N.D. Ohio Mar. 11, 2010) (discussing Ohio law). Nor do the parties address whether a tort claim for breach of implied warranty can be brought where the only damage claimed is a defect in the property that is the subject of the warranty. Because there are numerous factual issues as to plaintiff's claims for breach of implied warranty, and because there are several legal issues that Regal has failed to adequately develop, Regal is not entitled to summary judgment in its favor on these claims.

## C. Consumer Sales Practices Act Claims

### 1. Applicable law

Plaintiff claims that Regal violated the Consumer Sales Practice Act (CSPA), Ohio Rev. Code § 1345.01, *et seq.*, by engaging in deceptive practices with regard to the purchase of the 2010 boat. The CSPA prohibits a supplier from committing "an unfair or deceptive act or practice in connection with a consumer transaction" whether before, during, or after the transaction. Ohio Rev. Code § 1345.02(A). In order to prevail on a claim under the CSPA, plaintiff must establish that "a material misrepresentation, deceptive act or omission" impacted his decision to purchase the item at issue. *Sirlouis*, 2012 WL 1068709, at *16 (citing *Mathias v. Am. Online, Inc.*, No. 79427, 2002 WL 377159, at *5 (Ohio App. 8 Dist. Feb. 28, 2002) (citing *Janos v. Murduck*, 672 N.E.2d 1021 (Ohio App. 9 Dist. 1996)). Because the CSPA "is a remedial law which is designed to compensate for traditional consumer remedies," the Act must

26

be liberally construed. *Einhorn v. Ford Motor Co.*, 548 N.E.2d 933, 935 (Ohio 1990) (citations omitted).

Section 1345.01 defines terms used in the Act. Ohio Rev. Code § 1345.01. "Consumer transaction" is defined as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." "Supplier" means "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer." A "consumer" is defined as "a person who engages in a consumer transaction with a supplier." Section 1345.02 sets forth a non-exhaustive list of unfair or deceptive acts or practices, including representations by a supplier:

> (1) That the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have;
> (2) That the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not;
> (3) That the subject of a consumer transaction is new, or unused, if it is not;
> (4) That the subject of a consumer transaction is available to the consumer for a reason that does not exist;
> (5) That the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not, except that the act of a supplier in furnishing similar merchandise of equal or greater value as a good faith substitute does not violate this section;
> (6) That the subject of a consumer transaction will be supplied in greater quantity than the supplier intends;
> (7) That replacement or repair is needed, if it is not;
> (8) That a specific price advantage exists, if it does not;
> (9) That the supplier has a sponsorship, approval, or affiliation that the supplier does not have;
> (10) That a consumer transaction involves or does not involve a warranty, a disclaimer of warranties or other rights, remedies, or obligations if the representation is false.

Ohio Rev. Code § 1345.02(B).

Ohio courts have specifically held that a manufacturer's failure to repair a defect covered by a warranty can constitute a violation of the CSPA. *Temple v. Fleetwood Enterprises, Inc.*, 133 F. App'x 254, 266 (6th Cir. 2005) (citing *Boyle v. Daimler Chrysler Corp.*, No. 2001-CA-81, 2002 WL 1881157, at *7 (Ohio App. 2 Dist. Aug. 16, 2002); *Brown v. Lyons*, 332 N.E.2d 380, 385 (Ohio Ct.C.P. 1974)).

The CSPA generally defines "unfair or deceptive consumer sales practices" as practices that "mislead consumers about the nature of the product [or service] they are receiving. . . ." *Davis v. Byers Volvo*, No. 11CA817, 2012 WL 691757, at *7 (Ohio App. 4 Dist. Feb. 24, 2012) (citing *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, ¶ 24 (Ohio 2005)). A deceptive act is one that "has the tendency or capacity to mislead consumers concerning a fact or circumstance material to a decision to purchase the product or service offered for sale." *Id.*, at *8 (citations omitted). A deceptive act has been defined as one that "'has the likelihood of inducing a state of mind in the consumer that is not in accord with the facts.'" *Id.*, at *7 (citations omitted). Generally, "'[t]he basic test is one of fairness; the act need not rise to the level of fraud, negligence, or breach of contract.'" *Id.* (citations omitted). Thus, to be actionable as a deceptive act, the supplier's act must be (1) false, and (2) material to a consumer's decision to purchase the product or service involved. *Id.*, at *8. "A matter that is merely incidental to the choices a consumer must make when deciding to engage in the transaction is, therefore, not 'deceptive' within the meaning of the [CSPA] . . . ." *Id.* (citation omitted).

"[S]tatements of mere puffing or opinion [are] not actionable under the [CSPA]." *Id.* (citing *Howard v. Norman's Auto Sales*, No. 02AP-1001, 2003 WL 21267261, ¶ 34 (Ohio App. 10 Dist. June 3, 2003)). "Puffery" is generally defined as "'exaggerated blustering or subjective boasting upon which no reasonable consumer would rely.'" *Davis*, 2012 WL 691757, at *8

28

(collecting cases). "The term 'Puffing' refers generally to an expression of opinion not made as a representation of fact. A seller has some latitude in puffing his goods, but he is not authorized to misrepresent them or to assign to them benefits they do not possess. Statements made for the purpose of deceiving prospective purchasers cannot properly be characterized as mere puffing." *Id.*, at \*9.

As a remedy for a violation of § 1345.02, the consumer has the alternative under § 1345.09(B) of either rescinding the transaction or recovering damages up to three times the amount of those actually incurred for the violation.[2] The consumer is required to elect between the two remedies prior to trial. *Williams v. Banner Buick, Inc.*, 574 N.E.2d 579 (Ohio App. 12 Dist. 1989). Where the plaintiff chooses rescission as the remedy, "revocation of the consumer transaction must occur within a reasonable time after the consumer discovers or should have discovered the ground for it and before any substantial change in condition of the subject of the consumer transaction." Ohio Rev. Code § 1345.09(C)(1).

### 2. The parties' arguments

Defendant asserts that the transfer of the 2010 boat was not a "consumer transaction" governed by the CSPA because it occurred pursuant to the Settlement Agreement between plaintiff and Land N Sea, which is not actionable under the CSPA. Regal further contends it was not a party to the Settlement Agreement in any event, and plaintiff waived all claims with respect to the subject of the Agreement. Regal alleges it had no duty to plaintiff, omitted no facts, and told no lies. Regal also contends that the parol evidence rule applies to plaintiff's CSPA action.

---

[2] Under the CSPA, "the word 'damages' is a legal term of art which characterizes the remedy elected by the consumer and is distinguished from 'rescission.' *See, e.g.,* Ohio Rev. Code § 1345.09(A) and (B). That is, if a consumer transaction is rescinded, the return of the purchase . . . price to the consumer does not constitute 'damages' under [Ch. 1345]." *Frey v. Vin Devers, Inc.*, 608 N.E.2d 796, 800-01 (Ohio App. 6 Dist. 1992).

Finally, Regal asserts that rescission of the Settlement Agreement is impossible. (Doc. 57 at 9-14).

Plaintiff alleges that the Settlement Agreement is not material to his claim under the CSPA because Regal was not a party to that Agreement. Plaintiff contends that his claim is based on Regal's unfair, deceptive and unconscionable conduct under the CSPA consisting of misrepresentations about the quality of Regal's boats, its commitment to customer satisfaction, and Land N Sea's status as a reputable dealer, all of which caused him to purchase the 2010 boat and do business with Land N Sea. Plaintiff contends that the parol evidence rule does not prohibit the introduction of evidence regarding Regal's conduct because the rule does not apply where there is fraud, and there is evidence that Regal's conduct fraudulently induced plaintiff to enter into the Settlement Agreement with Land N Sea and purchase the 2010 boat. (Doc. 70 at 9-11).

In reply, Regal asserts that plaintiff did not make clear until he filed his memorandum in opposition to the motion for summary judgment that he was seeking rescission of the transaction with Regal. (Doc. 74 at 14-15, citing Doc. 70 - "In this case, Risner seeks rescission of the transaction with Regal, plain and simple."). Regal contends that prior to that statement, plaintiff sought alternative remedies in the complaint, which is not allowed under the CSPA.[3] (Doc. 74 at 15, citing *Clemens v. Duwel*, 654 N.E.2d 171, 178 (Ohio App. 2 Dist. 1995) ("Regardless of whether in a particular case the consumer has a right to collect treble or only actual damages, the consumer is required to choose between an award of damages or rescission . . . because "it is inconsistent to allow the consumer to rescind the contract while at the same time retaining rights

---

[3] In the complaint, plaintiff alleged he is entitled to recover treble damages and attorney fees, or, alternatively, to seek rescission of the contract. (Doc. 1, ¶ 42).

in that contract and suing for damages.") (citing *Mid-America Acceptance Co. v. Lightle*, 579
N.E.2d 721, 727 (1989)). Regal asserts that the only transaction plaintiff can rescind is the
Settlement Agreement, to which it was not a party and in which the only role it played was
sending the 2010 boat to Land N Sea so that Land N Sea could comply with the Settlement
Agreement. Regal contends that although plaintiff points to communications he had with Regal
surrounding the Settlement Agreement, undoing those conversations will not lead to repossession
of the boat by Regal.

In addition, Regal asserts that plaintiff never unambiguously rescinded the transaction as
required by the CSPA. (Doc. 74 at 16, citing *Frey*, 608 N.E.2d 796). Regal asserts that on an
unspecified date before filing the complaint, plaintiff asked Regal to take the boat back and
refund his money to him, but plaintiff sent an email 10 days later informing Regal the boat was
exceeding his expectations. Regal alleges plaintiff waited an unreasonable amount of time to
seeks rescission, although Regal specifies no dates, and that the boat underwent a substantial
change by depreciating in value by 21% from $284,000 at the time of the Settlement Agreement
to $225,000 on April 8, 2012, the date Regal's expert inspected the boat. *See Lloyd v. Buick
Youngstown, GMC*, 686 N.E.2d 350, 353 (Ohio App. 7 Dist. 1996) (trial court did not err by
finding vehicle would have suffered substantial depreciation over five years so that claim was
not made before any substantial change in the condition of the goods occurred).

Finally, Regal argues that plaintiff misunderstands its argument about the parol evidence
rule.

### 3. Resolution

There are disputed issues of material fact that preclude a grant of summary judgment in
favor of Regal on plaintiff's CSPA claim.

First, the parties dispute whether plaintiff is challenging conduct by Regal that occurred in connection with a "consumer transaction" as defined under the CSPA, Ohio Rev. Code § 1345.01(A). Regal contends that plaintiff is claiming a breach of the Settlement Agreement it entered into with Land N Sea, which Regal alleges is not a transaction covered by the CSPA. Plaintiff denies that its dispute concerns the terms of the Settlement Agreement. Construing the record and the inferences to be drawn therefrom in plaintiff's favor, plaintiff alleges that Regal engaged in unfair and deceptive acts prohibited under § 1345.02(B) by (1) inducing him to enter into the Settlement Agreement with Land N Sea, and (2) inducing him to purchase the 2010 boat. Liberally construing the CSPA, the transfer of the 2010 boat to plaintiff under these circumstances appears to be covered by the Act.

In addition, there are disputed issues of fact as to whether Regal made materially false statements within the meaning of the CSPA that induced plaintiff to enter into the Settlement Agreement and purchase the 2010 boat. Regal contends there is no evidence to show it made false and material statements related to plaintiff's acquisition of the 2010 boat, and there is no evidence its statements reflected anything other than its honest beliefs about the transaction and the boat. Regal contends the allegedly false and misleading statements plaintiff claims it made constitute nothing more than mere puffery. (Doc. 57 at 11-12, citing *Davis*, 2012 WL 691757 (finding there was no evidence that celebrity football player's statements in advertisement misled consumer about quality of dealership's service department, and player's statements comparing vehicle dealership to top football conference and a "tradition of excellence" in advertisement for dealership constituted mere "puffery" and thus were not actionable in a CSPA claim); *Howard,* 2003 WL 21267261, at *5 (evidence established that defendants breached an express warranty by making representations that car was in good, reliable condition and that it would not need any

32

repairs for six to eight months)). However, plaintiff points to a number of statements Regal made to induce him to purchase the 2010 boat that were allegedly false and misleading. While some of the statements may have been mere puffery (*e.g.*, statements that Regal builds quality boats and customer service is top priority), others are sufficient to support a claim under the CSPA if proven as true. Accordingly, whether Regal made false and misleading statements that induced plaintiff to purchase the boat is to be determined based on all the evidence the parties introduce at trial.

Regal also contends that plaintiff cannot pursue a claim against it for fraudulent representations under the CSPA because the duty to disclose arises when one party has information that the other party is entitled to know because of a fiduciary or other similar relation of trust and confidence between them. Regal cites cases to show that such a relationship must exist. *See Lucas Ford, LLC v. Ford Motor Credit Co.*, No. 3:09cv451, 2011 WL 1831739 (N.D. Ohio May 12, 2011); *State v. Warner*, 564 N.E.2d 18, 40 (Ohio 1990). However, none of these cases involve a claim under the CSPA. Plaintiff is claiming a number of misrepresentations, and it is disputed whether Regal made false and material misrepresentations. Regal's argument that there is no evidence that it did is not sufficient to establish that it did not make any misrepresentations.

In addition, Regal asserts that plaintiff's "communications with Regal before entering the agreement with Land N Sea cannot form the basis of a CSPA action." (Doc. 57 at 10). Regal indicates that under the parol evidence rule, plaintiff cannot introduce extrinsic evidence that contradicts the parties' final written contract in order to prove a CSPA violation absent evidence of fraud, mistake, or other invalidating cause. (*Id.*, citing *Williams v. Spitzer Autoworld Canton, L.L.C.*, 913 N.E.2d 410 (Ohio 2009)). The parol evidence rule provides that "'absent fraud,

33

mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.'" *Williams*, 913 N.E.2d at 549 (citing *Galmish v. Cicchini*, 734 N.E.2d 782 (Ohio 2000)). "The principal purpose of the parol evidence rule is to protect the integrity of written contracts." *Id*. (citing *Galmish*, 734 N.E.2d 782). Regal indicates that plaintiff is attempting to introduce extrinsic evidence that varies the terms of the Settlement Agreement in violation of the parol evidence rule. However, Regal was not a party to the Settlement Agreement, and evidence as to alleged misrepresentations Regal made that purportedly caused plaintiff to enter into the Agreement with Land N Sea and purchase the 2010 boat does not appear to contradict the terms of the Agreement. Thus, the Court cannot determine as a matter of law that all communications plaintiff had with Regal prior to the date of the Settlement Agreement are barred by the parol evidence rule.

Finally, there are disputed issues as to the available remedy. As Regal concedes, plaintiff has made clear in his opposing memorandum that he is seeking rescission as a remedy rather than damages, and specifically he seeks to rescind the purchase and sale of the 2010 boat. Whether plaintiff is entitled to rescind the transaction hinges on a number of disputed issues. These include whether plaintiff attempted to timely and unequivocally revoke the transaction. Regal denies that plaintiff ever revoked the transaction before filing the complaint. (Doc. 74 at 14-15). Plaintiff has produced evidence that he sought to revoke the transaction 13 days after the boat was finally delivered to him in a July 20, 2010 email (Doc. 70 at 21, citing Doc. 71, Exh. 20; Risner Depo., p. 89), and that counsel reiterated the demand for rescission in correspondence dated January 26, 2011. (Doc. 71, Exh. 21). Thus, a finding that plaintiff did not timely rescind the transaction as required under Ohio Rev. Code § 1345.09(C)(1) is not warranted.

34

In addition, the parties dispute whether there was a substantial change in the condition of the 2010 boat that occurred before plaintiff revoked the transaction which precludes rescission of the purchase. *See* Ohio Rev. Code § 1345.09(C)(1). Regal contends there can be no rescission where there has been substantial depreciation of the goods. (Doc. 57 at 13). Regal contends there was a substantial change in the condition of the boat because it depreciated in value. (*Id*. at 17). Plaintiff has produced evidence that shows there was no substantial change in the condition of the boat between the time of delivery and the time of revocation. Plaintiff testified at his deposition that he put the boat in the water for the first time on August 1, 2010, following the initial July 20, 2010 revocation (Risner Depo., p. 86); that the boat has been operated only 8 hours to date (Risner Depo., p. 186); and the boat has been stored in an enclosed warehouse since October 2010. (Risner Depo., p. 184). Further, plaintiff notes that Regal's expert, upon inspecting the boat on April 8, 2012, observed the bottom of the boat was "structurally and cosmetically in like new condition." (Doc. 61, Exh. KK).

Moreover, the cases on which Regal relies to assert a substantial change in condition occurred are distinguishable on their facts from the present case and do not support Regal's claim that rescission is impossible because substantial depreciation in the value of the boat occurred between the time of sale and the time plaintiff sought to revoke the transaction. *See Lloyd v. Buick Youngstown, GMC*, 686 N.E.2d 350 (Ohio App. 7 Dist. 1996) (vehicle would have suffered substantial depreciation in the five years between time of sale and filing of complaint); *Davenport v. Score Automotive, Inc.*, No. CA97-03-042, 1997 WL 746060, at *2 (Ohio App. 12 Dist. Dec. 1, 1997) (a vehicle driven 40,000 miles would have substantially changed because of the material and/or physical deterioration of the vehicle); *Frey*, 608 N.E.2d 796 (vehicle had been driven extensively in the more than six months since the time lessees first

35

mentioned rescission); *Clayton v. McCary*, 426 F. Supp. 248, 262 (N.D. Ohio 1976) (original engine on automobile had been replaced and the replacement engine was locked, rendering the automobile inoperable, by the time rescission was sought).

Regal offers a number of other arguments to show rescission is impossible, none of which supports a grant of summary judgment in its favor. Regal argues rescission is impossible here because undoing the transaction would require "holding Regal responsible for reversing a settlement agreement to which it was not a party. . . ." (Doc. 57 at 14). In support of its position, Regal cites authority for the proposition that revocation of acceptance and rescission is limited to actions against the seller, not the manufacturer. (*Id.*, citing *Voytovich v. Bangor Punta Operations, Inc.*, 494 F.2d 1208, 1211 (6th Cir. 1974)). However, *Voytovich* does not support Regal's position because that case was not brought under the CSPA; instead, the Court found no authority that allowed a purchaser to rescind a sale against a manufacturer for a breach of express warranty.[4] *Voytovich*, 494 F.2d at 1211. Regal has not cited any authority to show that if the boat is defective, and if plaintiff was induced to purchase the boat based on false and material misrepresentations by Regal, the Settlement Agreement would operate as a bar to rescission of the purchase of the boat.

Accordingly, there are numerous disputed issues of material fact underlying resolution of plaintiff's CSPA claim. For these reasons, Regal is not entitled to summary judgment on plaintiff's claim under the CSPA.

**D. Negligent misrepresentation**

Plaintiff claims as his third cause of action that Regal committed negligent

36

misrepresentation. (Doc. 1, ¶¶ 43-47). Plaintiff alleges that Regal supplied false information to him regarding the character and quality of the boat, its ability and intention to repair the boat, and it ability and intention to provide him with the title for the boat; plaintiff reasonably relied on those representations by taking delivery of the boat and incurring substantial expense to maintain the boat while plaintiff and Regal attempted to resolve their disputes; Regal failed to exercise reasonable care in communicating those representations to plaintiff; and plaintiff has been damaged in the amount of approximately $300,000.00.

To prove his claim of negligent misrepresentation, plaintiff is required to demonstrate that Regal "in the course of [its] business . . . or in any other transaction in which [it] has a pecuniary interest, supplie[d] false information for the guidance of [plaintiff] in [his] business transactions"; did so without exercising "reasonable care or competence in obtaining or communicating the information"; that plaintiff justifiably relied on that information; and that "pecuniary loss" resulted from that reliance. *Delman v. City of Cleveland Heights*, 534 N.E.2d 835, 838 (Ohio 1989).

Regal argues that it is entitled to summary judgment on plaintiff's claim for negligent misrepresentation because plaintiff entered into a Settlement Agreement with the advice of counsel, Regal was not a party to the Agreement, plaintiff waived any claims with respect to the 2010 boat, and Regal made no affirmative false statement to plaintiff. (Doc. 57 at 15). In response, plaintiff generally alleges that Regal made "many affirmative false statements" to plaintiff, including that Land N Sea was a reputable, financially sound dealer; that its boats were "top quality" and that "its customer service was its top priority;" and that it would fix all of the

---

[4] Regal also cites *Kuns,* 2013 WL 645621, for the general proposition that rescission is impossible in this case, but Regal does not refer to any specific part of the opinion and does not identify the specific proposition set forth in

problems with the boat and "make [plaintiff] whole." (Doc. 70 at 24). In its reply memorandum, Regal disputes that the statements on which plaintiff allegedly relied are sufficient to support a cause of action for negligent representation. (Doc. 74 at 17-19).

The only evidence Regal relies on to show that there are no disputed factual issues concerning plaintiff's negligent misrepresentation claim is plaintiff's admission that Regal informed him before he entered into the Settlement Agreement that Land N Sea was "broke." (Doc. 74 at 17, citing Doc. 71, Responses to FOFs 19, 26). Regal cites to no other evidence in the record to demonstrate that there is no genuine issue of material fact on plaintiff's negligent misrepresentation claim and to show it is entitled to summary judgment on this claim. Regal's generalized argument falls well short of meeting its burden on summary judgment of presenting evidence demonstrating there are no genuine issues of material fact as to this claim. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."). Regal is therefore not entitled to summary judgment on plaintiff's claim for negligent misrepresentation.

## E. Intentional misrepresentation

Plaintiff brings a claim for intentional misrepresentation based on the same alleged misrepresentations that form the basis for his negligent misrepresentation claim. Plaintiff claims that Regal knew the representations it made to plaintiff regarding the boat were false, the representations were material to plaintiff's decision to take delivery of the boat and to incur substantial expense to maintain the boat while plaintiff and Regal attempted to resolve their

---

*Kuns* that supports its position.

dispute, and Regal made the representations with the intent of inducing plaintiff to rely on them. (Doc. 1, ¶¶ 48-56). Plaintiff seeks damages in the amount of $300,000.00 plus interest and attorney fees for Regal's false representations, as well as punitive damages.

The elements of a fraud or intentional misrepresentation claim under Ohio law are (1) a misrepresentation of a material fact; (2) made with knowledge of its falsity, or with such utter disregard as to its truth that knowledge may be inferred; (3) with the intent to induce another's reliance on it; (4) justifiable reliance upon the representation or concealment; and (5) a resulting injury proximately caused by the reliance. *Burr v. Bd. of Cnty. Comm'rs*, 491 N.E.2d 1101, 1105 (Ohio 1986).

Regal contends it is entitled to summary judgment on plaintiff's intentional misrepresentation claim because it was not a party to the Settlement Agreement between plaintiff and Land N Sea that resulted in the exchange of the 2008 boat for the 2010 boat; plaintiff waived all claims with respect to the 2010 boat; Regal had no duty to disclose information regarding Land N Sea's financial condition; and Regal did not withhold any such information. (Doc. 57 at 16). In response, plaintiff contends that the same affirmative misrepresentations that form the basis for its negligent misrepresentation claim form the basis for his "alternative claim" for intentional misrepresentation; the Settlement Agreement does not shield Regal from liability for the misconduct of its employees; and Regal relies only on broad, conclusory statements in support of its motion for summary judgment on this claim. (Doc. 70 at 24-25). In reply, Regal points only to plaintiff's admission that he knew Land N Sea was "broke" before he entered into the Settlement Agreement to demonstrate plaintiff cannot prevail on his intentional misrepresentation claim. (Doc. 74 at 19).

Regal is not entitled to summary judgment on plaintiff's intentional misrepresentation

39

claim for the same reasons stated in connection with plaintiff's claim for negligent misrepresentation. Accordingly, Regal's motion will be denied as to this claim.

### F. Plaintiff's damages claims.

Regal contends that plaintiff has not proven his damages because (1) plaintiff's damages request for $300,000.00 presumes revocation of the Settlement Agreement with Land N Sea, which Regal contends is not an available remedy in this case given there is no privity between Regal and plaintiff so as to permit plaintiff to revoke acceptance of the Agreement, (2) plaintiff has not provided a reasonable measure of damages pursuant to Ohio Rev. Code § 1302.88, and (3) plaintiff cannot recover incidental or consequential damages.

In response, plaintiff cites authority in support of his position that a manufacturer can be a supplier under the CSPA and that rescission and revocation of the transaction at issue is proper against Regal, particularly as Regal was actively involved in the transaction. (Doc. 70 at 25-26).

Plaintiff further contends that Ohio Rev. Code § 1302.88 has no applicability here because the statute applies to a breach of contract as to accepted goods, not revocation of acceptance or damages under the CSPA. Plaintiff argues that § 1302.88 does not apply to the money damages he seeks in this case, which include incidental and consequential damages. (Doc. 70 at 27). Plaintiff asserts he is entitled to recover such expenses under tort theories of recovery, and he argues that such damages cannot be precluded by a warranty when the warranty has failed its essential purpose, *i.e.*, when the seller has been unwilling or unable to make repairs pursuant to the warranty in a reasonable amount of time, which is a question for the fact-finder. (Doc. 70 at 28, citing *Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co.*, 537 N.E.2d 624 (Ohio 1989)).

It therefore appears that plaintiff is seeking rescission under the CSPA and incidental and

consequential damages under his remaining theories of recovery. The parties have not addressed whether an individual can seek both rescission under the CSPA and damages under additional theories of recovery, or whether the individual's recovery is limited to rescission under the CSPA. Assuming plaintiff is entitled to recover damages, there are issues of fact as to the amount of damages, if any, plaintiff sustained as a result of Regal's misconduct. The parties should be prepared to specifically address damages amounts at trial and in their proposed findings of fact and conclusions of law to be filed post-trial in accordance with the undersigned's Civil Procedures, Section II, P. *See* http://www.ohsd.uscourts.gov/judges/fplitkovitz.htm.

### VIII. Conclusion

For the reasons set forth above, defendant Regal's motion for summary judgment (Doc. 57) is GRANTED in part and DENIED in part. The motion is GRANTED as to plaintiff's claims for promissory estoppel and unjust enrichment (Counts 5, 6). The motion is DENIED as to plaintiff's claims for breach of express and implied warranties, violations of the CSPA, negligent misrepresentation, and intentional misrepresentation. (Counts 1, 2, 3, 4). This case will proceed to trial on those claims in accordance with the schedule established by the Court.

**IT IS SO ORDERED.**

Date: _4/24/2013_

Karen L. Litkovitz
United States Magistrate Judge

41